# UNITED STATES DISTRICT COURT

# DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ERNESTO ROCHA ) | |
| *Plaintiff* ) | C.A. No. 16-600S |
| vs. ) | |
| ) | |
| WELLS FARGO BANK, N.A. ) | |
| D/B/A WELLS FARGO HOME MORTGAGE ) | |
| d/b/a AMERICA'S SERVICING COMPANY; ) | JURY TRIAL DEMANDED |
| U.S. BANK N.A. AS TRUSTEE, FOR ) | |
| RESIDENTIAL ASSET SECURITIES ) | |
| CORPORATION, HOME EQUITY MORTGAGE ) | |
| ASSET-BACKED PASS-THROUGH ) | |
| CERTIFICATES, SERIES 2006-EMX1; ) | |
| ) | |
| HARMON LAW OFFICES P.C. ) | |
| ) | PLAINTIFF'S |
| ALL PERSONS UNKNOWN, CLAIMING ANY ) | 1ST AMENDED |
| LEGAL OR EQUITABLE RIGHT, TITLE, ) | COMPLAINT FOR |
| ESTATE, LIEN OR INTEREST IN THE ) | DAMAGES |
| PROPERTY DESCRIBED IN THE COMPLAINT ) | |
| ADVERSE TO PLAINTIFF'S TITLE THERETO; ) | |
| ) | |
| INDIVIDUALLY, JOINTLY AND SEVERALLY ) | |
| *Defendants* ) | |
| ) | |

## I.   Preliminary statement

- Plaintiff purchased a home using an "80/20 mortgage arrangement" where both mortgages were held by Wells Fargo

- High interest rates, issues related to adjustable rate mortgages, & the large amount of "negative equity" gave Ernesto with few options

- While waiting for an answer from Wells Fargo on his request for a loan modification, he falls further behind in his mortgage payments

- Facing foreclosure, Ernesto turns to the Bankruptcy Court for help

- Foregoing pastimes he enjoyed before buying his home, Ernesto takes as many double shifts as he can as a supervising medical professional at a demanding job so that he can complete his Chapter 13 Plan

- Despite his hard work and sacrifices, problems with Wells Fargo continue to escalate, significantly affecting his physical health and his happiness

- Harmon Law, in its role as local counsel for Wells Fargo, is not effective at getting its client to make necessary systemic changes

- Ernesto's learns that his home has been sold at a tax sale due to non-payment of real property taxes, despite escrow payments to Wells Fargo & mortgage statements indicating tax payments were made to the City

- His home is advertised as available at tax sale for four years in a row, and he must redeem it when it is purchased three times

- His monthly statements show that he has not paid his mortgage in years, and that his escrow account is tens of thousands of dollars short, because all of the payments made to Wells Fargo are placed in a suspense account

- Wells Fargo begins to apply funds from the suspense account in September 2015, using a method that seems to defy any logical explanation, in that for several days in a row, funds are applied and payments are reversed, most using a date of 12/31

- Efforts by Ernesto & his attorney to work with Wells Fargo to resolve any of these issues ends when the Bankruptcy Department refused to review the account because the bankruptcy case is closed, and the mainstream customer service account managers state that they do not understand the problem or know what to do about it

- In January 2016, Ernesto stops paying the payments demanded by Wells Fargo, as he & his attorney believe that he has paid the mortgage in full at that point & that this is the only way left to get someone at Wells Fargo to address the problems

- Wells Fargo will not acknowledge the issues, and Harmon Law contacts Ernesto to advise him that he is scheduled for foreclosure again
- RI Superior Court grants a TRO to stop the foreclosure sale scheduled for 09/30/16 and shortly thereafter, the case is removed to US District Court
- After unrelated issues derail an attorney working with Ernesto, he finds himself facing foreclosure again, with a date of 09/04/17
- The sale is postponed for 3 months so that the parties can attempt mediation on 09/15/17

## II.   Jurisdiction

1) All parties identified in this matter are subject to the jurisdiction of the US District Court for the District of Rhode Island

2) The amount in controversy surpasses the threshold amount required to establish jurisdiction

3) Venue is appropriate because the property is in Rhode Island, the Plaintiff resides in Rhode Island, and all Defendants have sufficient minimum contacts within the State of Rhode Island to cause them to be subject to the jurisdiction of the Court

## III.   The Parties

4) **Plaintiff, Ernesto Rocha**

Ernesto Rocha is a resident of the City of Providence, County of Providence, State of Rhode Island. He owns the subject real property, located in Rhode Island.

5) **Defendant, Wells Fargo Bank, N.A.**

Wells Fargo Bank, N.A, DBA Wells Fargo Home Mortgage is, and at all times herein mentioned was, a National Banking Association organized under the laws of the State of South Dakota, conducting business in Providence County, Rhode Island.

6) **Defendant, America's Servicing Company**

America's Servicing Company is, and at all times herein mentioned was, a subsidiary of Wells Fargo Home Mortgage currently headquartered in Des Moines, Iowa. Traditionally, "Wells Fargo" provides managerial services for loans that were originated by other lenders and subsequently taken over by Wells Fargo. It collects a fee for its services and distributes the rest of the funds collected from borrowers and third parties to other parties such as the lender, home insurance providers for insurance premiums, and real property tax receivers, to name a few of its responsibilities.

7) **Defendant, U.S. Bank National Association**

U.S. Bank National Association as Trustee, For Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-Emx1 is, and at all times herein mentioned was, a National Banking Association organized under the laws of the State of Minnesota, conducting business in Providence County, Rhode Island.

8) **Defendants, collectively, referred to as "Wells Fargo"**

a) The above-named Defendants, collectively, are usually referred to in this complaint as "Wells Fargo." The parties have acknowledged and agreed that "Wells Fargo" is comprised of Wells Fargo N.A.,

U.S. Bank National Association, America's Servicing Company, and Wells Fargo's numerous subsidiaries and similarly-related companies, originates and services loans. "Wells Fargo" engages in servicing activities relating to the loans by processing borrower payments, collecting borrowers' debts that are in default, administering loss mitigation programs and processes, and managing foreclosures, among other things. This includes daily operation of payment processing, escrow, insurance, consumer complaint operations and call center staffing and response, loss mitigation and foreclosure management, and supporting technological functions. It reports the status of borrowers' mortgage loans to the major credit bureaus and maintains the records that are submitted to those bureaus, used to calculate borrowers' credit scores for purposes that include determining credit-worthiness and applying for certain jobs that require that an applicant demonstrate financial responsibility.

b) "Wells Fargo" is and has been at all times relevant to this Complaint a "covered person" as that term is defined by 12 U.S.C. § 5481(6)(A), because it offers or provides a consumer financial product or service for use by consumers primarily for personal, family, or household purposes, or that is delivered, offered, or provided in connection with such a product or service by: servicing mortgage loans; collecting on consumers' mortgage debts; and

marketing and processing and transmitting payments for credit monitoring products, financial advisory products, and other products that are added on to the accounts of borrowers whose loans it services ("add-on products"). See 12 U.S.C. § 5481(15)(A)(i), (iv), (vii), (viii), and (x).

c) U.S. Bank National and the other entities included in "Wells Fargo" as previously identified, along with other subsidiaries and shareholders that materially participate in the conduct of affairs of Wells Fargo but are now unknown to your Plaintiff are and at all relevant times were "related persons" because they are direct or indirect shareholders, controlling shareholders, and shareholders who materially participate in the conduct of affairs of Wells Fargo. See 12 U.S.C. § 5481(25)(C)(i) and (ii). Thus "Wells Fargo" collectively is deemed to be a covered person "for all purposes of any provision of Federal consumer financial law." See 12 U.S.C. § 5481(25)(B).

d) The entities that comprise "Wells Fargo" as defined operate as a common enterprise in that they have conducted business practices described here within through interconnected companies that have common business functions, employees and/or office locations. For example, America's Servicing Company operates Wells Fargo Home Mortgage's mortgage servicing activities, to include payment processing and transmittal, loss mitigation processes, and

foreclosure related activities and processes. Accordingly, they are each jointly and severally liable for the acts and practices alleged below.

9) **Defendant, Harmon Law Offices, P.C.**

e)   Harmon Law Offices, P.C. is, and at all times herein mentioned was a Massachusetts corporation, organized and existing under the laws of the State of Massachusetts, doing business in many locations both within and outside of Massachusetts, to include in Providence County, Rhode Island.

f)   Harmon regularly attempts on behalf of its mortgage lender clients to obtain payment for debts alleged to be due another and is a debt collector as defined by 15 U.S.C. § 1692a(6). It identifies itself as a debt collector in its communications with borrowers. It regularly attempts to collect and does collect foreclosure attorney fees and other fees and costs associated with foreclosure processes, even when no foreclosure sale occurs, such as in the context of reinstatement demands and loan payoffs. It also represents mortgage lenders, including Wells Fargo, in bankruptcy court proceedings to obtain payment for debts alleged to be owed to mortgage lenders by debtors whose assets are being liquidated or who are reorganizing and have included payment to a mortgage lender represented by Harmon in their Plans and/or other distributions through a Trustee to the Lender. Harmon's fees are

included in the proofs of claim submitted on behalf of their client

lenders to the bankruptcy courts.

g) In the Bankruptcy Court for the District of Rhode Island, and in

payment collection and foreclosure of borrowers' loans, Harmon has

regularly represented and worked with and as an agent for "Wells

Fargo" to collect debt payments and to administer loss mitigation

and foreclosure processes. Plaintiff asserts that, as defined by 15

U.S.C. § 1692a(6) and interpreted by the Third, Fourth and Sixth

Circuits, foreclosure law firms such as Harmon are debt collectors

and as such, are subject to the FDCPA.

**10) Harmon Law was not excluded from the requirements of the Fair**

**Debt Collection Procedures Act (FDCPA) by the security enforcer**

**clause under 15 U.S.C. §1692a(6) when it a initiated a wrongful**

**foreclosure against your Plaintiff on behalf of Wells Fargo in 2016**

h) Harmon Law knew or should have known that with respect to

Plaintiff and his home, Wells Fargo did not have a present right to

Plaintiff's home. Harmon Law was aware of the systemic and

deeply entrenched problems that exist in Wells Fargo still. The

servicing methods that Harmon is aware of that Wells Fargo

defiantly refuses to correct, combined with Harmon's first hand

knowledge of the Orders entered in Plaintiff's bankruptcy case,

make it impossible for Harmon to protest that it was acting to

enforce a security interest when it initiated foreclosure proceedings

against your Plaintiff.

i)   Even if one department in Harmon doesn't talk to another
department in Harmon (ie. the foreclosure department and the
bankruptcy department), the attorney taking steps to foreclose
upon someone's home has the obligation to make reasonable
inquiries as discussed in the case <u>In re Niles C. & Angel J. Taylor</u> –
Bankruptcy No. 07-15385DWS (Bankr. ED PA. 2009). With respect
to Harmon Law, the role of the Udren Law Firm as local counsel to
HSBC Mortgage Corporation is so similar that I have attached a
copy of a particularly relevant opinion for this Court's convenience.

j)   If this Court chooses to follow the view held by the Fifth, Eleventh
and Ninth Circuits, it may conclude that Harmon is acting to
enforce a security interest held by the mortgage lender, and is not a
"debt collector" as defined by the FDCPA. Even if the Court were to
adopt this interpretation, the FDCPA contains an exception to that
"enforcement of security interests" loophole that prevents Harmon
from avoiding identification as a debt collector within the meaning
of the FDCPA.

k)   The FDCPA defines a narrow set of wrongful acts that are
prohibited, and if violated, are subject to prosecution under §
1692f(6). Specifically, under § 1692a(6), Harmon and other
foreclosure law firms and similar entities are prohibited from
taking or threatening to take nonjudicial action where the

PLAINTIFF'S 1ST AMENDED COMPLAINT FOR DAMAGES

individual or entity it represents has (1) no present right to the collateral; (2) where there is no present intent to exercise such rights; or (3) the property is exempt by law.

l)   The Plaintiff will provide evidence that in this case, the lender did not have a present right to the collateral. The Plaintiff will provide evidence that Harmon knew that this was true, but proceeded in violation of § 1692a(6) with an invalid foreclosure action against the Plaintiff notwithstanding knowledge that Wells Fargo did not have the legal ability to do so.

m)  With respect to your Plaintiff, Harmon is strictly, negligently, intentionally, vicariously liable and or otherwise legally responsible in some manner for the acts and omissions described herein.

11) **Wells Fargo, Harmon Law Offices P.C. and Persons Unknown as agents**

n)   Wells Fargo, Harmon Law Offices P.C. and Persons Unknown, inclusive and each of them, are and at all material times have been the agents, servants or employees of each other, purporting to act within the scope of said agency, service or employment in performing the acts and omitting to acts as alleged herein.

o)   Each of the Defendants named herein are believe to and alleged to have been acting in concert with, as employee, agent, co-conspirator or member of a joint venture of, each of the other Defendants, and are therefore alleged to be jointly and severally liable for the claims

set forth herein, except as otherwise alleged.

## IV.   Chronology of facts

### 12) Ernesto buys a home with mortgages held by Wells Fargo

On November 18, 2005, Plaintiff Ernesto Rocha bought a two-family house at 63 Nellie Street, in Providence, Rhode Island.  Ernesto bought his home using an "80/20 loan" with a first mortgage for $268,000 and a second mortgage for $67,000. Wells Fargo Bank, N.A. was the source of both the first and second mortgage used to finance the purchase of the property. America's Servicing Company, a subsidiary of Wells Fargo, was the servicer for the mortgages. The first was an Adjustable Rate Mortgage ("ARM"), where the interest rate was between 7.35% - 13.35%. The second mortgage was at an interest rate of 12.2%. The combined average payment per month was approximately $3,500. Property taxes were included, but Ernesto had his own insurance policy.

### 13) Ernesto asks Wells Fargo for help with his mortgage interest rates

In 2008, Ernesto applied for a loan modification, with assistance from Rhode Island Housing. A Wells Fargo representative told him in confidence that it was unlikely that he would be considered for a loan modification if he continued to pay the amounts now due. Wells Fargo representatives also assured him that if he was not approved for a modification, he could pay the amount due under the current mortgage contract and try applying for a loan modification later. After months of providing the same documents over and

over because Wells Fargo's loss mitigation department claimed it never received them, Ernesto finally gave up. He sent in the payment as it was before applying for the modification, but Wells Fargo refused to accept it.

### 14) Ernesto files for bankruptcy protection to save his home

Wells Fargo refused the payment. An arrearage accumulated while he was working with the loss mitigation representatives to try to get some relief from the high interest rates.  Harmon Law Offices sent a letter to Ernesto on behalf of Wells Fargo stating that his home would be sold at foreclosure in April 2009.  On April 9, 2009, Ernesto filed Case # 1:09-bk-11363 requesting bankruptcy protection under Chapter 13 in the District of Rhode Island.  On behalf of Wells Fargo, Harmon Law objected to several proposed Chapter 13 Plans filed by Ernesto's attorney. In late 2009, attorneys for both sides appeared at an evidentiary hearing. Expert witnesses testified as to the value of the house. A few weeks later, Judge Votolato entered an Order in which he determined the value to be $145,000.

### 15) Ernesto's 5th Amended Chapter 13 Plan with Motions to Modify the Secured Claims of Wells Fargo is confirmed in January 2010

The plan confirmed by the Court included motions to modify the first mortgage by reducing the principal to $145,000, and to modify the second mortgage by stripping it off, as it was wholly unsecured. Ernesto made Plan payments over 5 years that totaled $99,476. In March 2015, the Chapter 13 Trustee issued a Notice of Final Cure Mortgage Payment, a Notice of Plan Completion, and a Final Report and Account.

16) **Ernesto completes his Chapter 13 Plan payments and a Discharge Order is entered by the Court**

In response to the notices sent by the Chapter 13 Trustee, an agent or representative of Wells Fargo submitted a statement to the Court under the pains and penalties of perjury stating the Plaintiff had paid the arrearage in full and was current on all post-petition payments, fees, expenses and charges. When Ernesto's Discharge Order was entered, it caused the provisions contained in the Confirmation Order to become permanent.

17) **Ernesto's attorney asked Harmon Law to work with Wells Fargo to correct significant errors in servicing his first mortgage**

From the start of his bankruptcy case, Ernesto and his attorney noticed significant errors and contradictions in the notices sent to Ernesto compared to the documents provided to the Court by or on behalf of Wells Fargo. Trying to resolve the issues with Wells Fargo directly was time consuming and ineffective. When that did not produce results, Ernesto's attorney contacted Harmon Law to address these problems. Despite the effort put in by Harmon Law employees, they were not able to get their contacts at Wells Fargo to make the changes necessary to fix what was very likely systemic problem, likely software-related. The problems caused were serious, and the impact was obvious and devastating as time passed. In fact, that is what brought us to Court.

18) **Harmon Law failed to adequately address the serious issues and allegations brought to its attention by the Plaintiff**

This is particularly disturbing because Harmon Law is so familiar with the Bankruptcy Court and its processes that its members are aware of the huge number of families and individuals who have turned to the Bankruptcy Court for protection and a fresh start, only to be further harmed by Wells Fargo.

19) **Wells Fargo refuses to acknowledge or address the harm caused to its borrowers by the servicing practices that it continues to use**

Wells Fargo has refused to take responsibility for the harm that it causes and make fundamental changes to protect the families and individuals, such as those it acts as an escrow agent for. Significant punitive damages have been ordered and affirmed in cases such as <u>Michael L. Jones vs. Wells Fargo Home Mortgage, Inc.</u>, 2:12-cv-01362-ILRL-JCW, Doc 16, US Dist Ct, ED LA (2013) where punitive damages in the amount of $3,171,154 was determined to be reasonable given the Lender's refusal to make voluntary changes. The Court can create enough of a deterrent such that it will be more financially advantageous for Wells Fargo to correct its problems than continue to derive income from the harm it causes.

Wells Fargo's focus on profit to the point that the fiduciary duties it has to borrowers who entrust escrow money to Wells Fargo expecting their property taxes to be paid timely, for example, causes harm that is immediate and devastating. Plaintiff's property was sold at tax sale three times. The short and long-term ramifications of Wells Fargo's continuing refusal to acknowledge the systemic problems or make any meaningful attempt to

change the practices that have caused your Plaintiff so much harm is difficult
to contemplate.


# V.    Legal claims


## 1st.    Breach of contract and breach of fiduciary duty

### 1)   Negligent servicing practices

Through negligent servicing practices in violation of the protections
afforded consumers through RESPA as well as the Fair Debt Collection
Practices Act, Wells Fargo, acting at times with the support of Harmon Law,
has violated and continues to violate the contracts between your Plaintiff and
Wells Fargo, mortgage documents that were executed by the parties on
11/18/2005 and subsequently recorded in Providence RI.

### 2)   Misuse of escrow funds that caused Plaintiff's home to be sold at tax sale three times

Specifically, for several years in a row, Wells Fargo failed to make
payments on behalf of Plaintiff to the City of Providence for real property taxes.
Plaintiff had the right to and did rely upon Wells Fargo to use the money
provided in escrow to protect Plaintiff in accordance with the agreements
executed between the parties. As a direct and foreseeable result of Defendant
Wells Fargo's breaches, Plaintiff's home was sold at tax sale three times.

At all times, Mr. Rocha's mortgage payments included an escrow
amount to pay taxes to the City of Providence on the property, and he was
current on these payments pursuant to the Defendant ASC's affidavit filed
with the Bankruptcy Court, as well as to the knowledge of Plaintiff and his
attorney.  Nonetheless, in August 2011, the Plaintiff was informed by the city

tax collector that his property had in fact been sold at a tax sale on June 15, 2011.  At that time, Plaintiff had been making chapter 13 plan payments for two years, with approximately $25,000 going to Wells Fargo.  In its proof of claim, Wells Fargo indicated that escrow advances of more than $4,000 had been paid on Plaintiff's behalf.  The City of Providence disagreed, stating that the taxes had not been paid.

The following year, in May 2012, Plaintiff again received notice from the Office of City Collector that his home was to be sold for unpaid tax and interest owed as of December 2011. Plaintiff's bankruptcy attorney contacted the City to resolve these issues.

For a third time, in April 2013, Plaintiff received notice that his home was scheduled to be sold at a tax sale.  This notice was given even though Wells Fargo indicated in a mortgage statement dated May 28, 2013 that a payment of $5,930.04 was paid to the Providence City Tax Collector on March 26, 2013.  Wells Fargo further represented to Plaintiff that regular payments had been made to the City of Providence in the amount of $1,407.51 throughout 2013.

3) **Misuse of suspense accounts in violation of the provisions of the contracts between the parties**

4) **Failure to provide an accurate accounting that explains how Plaintiff's payments were applied**

During the pendency of the bankruptcy case, payments were received by Wells Fargo from Mr. Rocha directly as well as from the Chapter 13 Trustee.  Despite this, statements sent to Mr. Rocha by Wells Fargo reflect late fees, a negative escrow balance and a large amount of monies held in

suspense, not applied to the principal balance or escrow.  For example, in a statement dated March 16, 2015, it is indicated that payments remain unpaid for the period between June, 2009 and March, 2015 for a total amount due in excess of $166,000.00.  Three days after that statement was issued, the response filed in the Bankruptcy Court with respect to the Notice of Final Cure Payment indicated that the debtor Plaintiff had paid in full the amount required to cure the default on the creditor's claim and that the debtor was current on all post-petition payments.  The authorized agent declared under penalty of perjury that this information was true and correct to the best of his knowledge although it directly contradicts the mortgage statement issued just three days prior.

Substantially all the statements sent to the Plaintiff contain similarly conflicting indications of the status of Plaintiff's mortgage balance and details, despite the fact that they were sometimes as little as a day apart in time.  The differences were not explained, despite repeated requests made by Plaintiff and his attorney directly to Wells Fargo, to its agent, America's Servicing Company, and to its legal representative, Harmon Law.

### 5) Purchasing force placed insurance when Plaintiff provided proof repeatedly that he already had homeowner's insurance

Mr. Rocha's escrow payment also included the cost of force placed property insurance, despite evidence repeatedly provided to Wells Fargo and Harmon Law that he had insurance coverage already in place.  Plaintiff's attorney faxed proof of insurance at least five times.  Despite this verification of coverage, Wells Fargo continued to maintain a forced placed insurance policy charging Plaintiff for coverage that he did not want and did not need.

**2nd.    Initiation of wrongful foreclosure twice by Wells Fargo and Harmon Law**

Most recently, a foreclosure action was initiated after the original complaint was filed and Defendants were in possession of evidence that there wasn't a present right to the collateral in this instance.

Defendant Harmon Law Offices is complicit in this action in that it had actual and constructive knowledge that grounds relied upon in the foreclosure action against Plaintiff were false and inaccurate, not at all consistent with statements made under oath to the Court and with Orders issued by the Court, but nonetheless acted on behalf of Wells Fargo to accelerate the mortgage balance and advertise and schedule the Plaintiff's home to be sold at foreclosure in 2016.

**3rd.    Conversion and unjust enrichment**

**1)  Wells Fargo allowed funds to remain in a suspense account, not applied to the mortgage or to escrow, for years**

Wells Fargo had access to and the use of funds that belonged to your Plaintiff, and were transferred to Defendant for a specific purpose which Defendant failed to perform. The amount of money in the suspense account exceeded $100,000 for a lengthy amount of times, and exceeded $123,000 at a time close to entry of the Discharge Order in Bankruptcy Court.

**2)  Defendant used the funds in the suspense account to earn money which Defendant retained**

**3)  Defendant charged Plaintiff interest on the entire balance of the mortgage, which continued to increase due to funds in suspense not applied to the loan**

**4th.**   **Intentional or negligent infliction of emotional distress**

>   1)   Two wrongful foreclosures were initiated threatening Plaintiff's home

>   2)   Plaintiff's home was sold three times at tax sales because of Defendants' actions and failure to act

>   3)   Plaintiff has suffered from and continues to experience debilitating health issues because of the actions and failures to act of Defendants Wells Fargo and Harmon Law

Plaintiff has suffered from debilitating health issues that have a regular negative impact on his ability to engage in activities he enjoyed in the past and to fully enjoy his artistic, musical and spiritual life as he did before Defendants caused this harm. As a direct consequence of the Defendants' willful and deliberate actions, the Plaintiff has suffered damages including but not limited to extreme emotional distress resulting from his inability to prevent either foreclosure proceedings or the sale of his home due to "unpaid" taxes, damage to his credit history, and notice in local newspaper publications regarding the sale of his home due to his alleged failure to pay property taxes and mortgage payments, and the potential loss of his home despite five years of paying his mortgage and his Chapter 13 Plan payment. Most of his family, friends, co-workers and persons he supervised on the job have seen the ads for tax or foreclosure sale that include Plaintiff's full name and his address. Given the responsibilities of his position and the concerns that are created when someone appears to have an inability to be personally

financially responsible, it is likely to impact any opportunity for advancement in the near future.

4)   **Plaintiff has been unable to meet his obligations to the IRS because of Wells Fargo's servicing issues and failure to properly credit payments he made over the last 5 years**

This is an additional source of torment and stress for your Plaintiff, who has never had issues involving the Internal Revenue Service before.

## VI.   Relief Requested

1)   Plaintiff prays this Court enter judgment in his favor on all counts of this complaint.

2)   Plaintiff prays this Court permanently enjoin Defendants from initiating any foreclosure or other adverse action against Plaintiff with respect to his home.

3)   Plaintiff prays this Court award him damages in the amount of $15,000,000 for the continuing physical, emotional and spiritual harm he struggles with as a direct and proximate result of the actions of Defendants over the last 8 – 9 years.

4)   Plaintiff prays this Court award him punitive damages and attorney's fees.

5)   Plaintiff prays this Court award all further such relief the Court determines to be fair and equitable.

Dated: August 10, 2017

Respectfully submitted,
Ernesto Rocha,
By and through his attorney,


/s/ Dawn M. Vigue Thurston
Dawn M. Vigue Thurston (6720)
142 Putnam Pike
Johnston RI 02919-1456
(401) 261-1600
AuroraEsq2002@gmail.com


## CERTIFICATION

I, Dawn M. Vigue Thurston, hereby certify that on the 10th day of August 2017 the foregoing document was filed through the ECF system and will be sent electronically to the registered participants on the Notice of Electronic Filing. Paper copies will be sent to those indicated as non-registered participants.


/s/ Dawn M. Vigue Thurston
Dawn M. Vigue Thurston (6720)