UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|                                              |   |                      |
|----------------------------------------------|---|----------------------|
| ERNESTO ROCHA,                               | ) |                      |
|                                              | ) |                      |
| Plaintiff,                                   | ) |                      |
|                                              | ) |                      |
| v.                                           | ) | C.A. No. 16-600 WES  |
|                                              | ) |                      |
| WELLS FARGO BANK, N.A. D/B/A                 | ) |                      |
| WELLS FARGO HOME MORTGAGE d/b/a              | ) |                      |
| AMERICA'S SERVICING COMPANY;                 | ) |                      |
| U.S. BANK N.A. AS TRUSTEE, FOR               | ) |                      |
| RESIDENTIAL ASSET SECURITIES                 | ) |                      |
| CORPORATION, HOME EQUITY MORTGAGE            | ) |                      |
| ASSET-BACKED PASS-THROUGH                    | ) |                      |
| CERTIFICATES, SERIES 2006-EMX1;              | ) |                      |
| HARMON LAW OFFICES P.C.; ALL                 | ) |                      |
| PERSONS UNKNOWN, CLAIMING ANY                | ) |                      |
| LEGAL OR EQUITABLE RIGHT, TITLE,             | ) |                      |
| ESTATE, LIEN OR INTEREST IN THE              | ) |                      |
| PROPERTY DESCRIBED IN THE                    | ) |                      |
| COMPLAINT ADVERSE TO PLAINTIFF'S             | ) |                      |
| TITLE THERETO; INDIVIDUALLY,                 | ) |                      |
| JOINTLY AND SEVERALLY,                       | ) |                      |
|                                              | ) |                      |
| Defendants.                                  | ) |                      |
|                                              | ) |                      |

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, Chief Judge.

Before the Court is Defendants', Wells Fargo Bank, N.A. d/b/a Wells Fargo Home Mortgage d/b/a America's Servicing Company ("Wells Fargo") and U.S. Bank National Association as Trustee, for Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-EMX1 ("U.S. Bank") (collectively, "Defendants") Motion To Dismiss Plaintiff's

First Amended Complaint for Damages ("Motion") (ECF No. 48) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff Ernesto Rocha's First Amended Complaint for Damages ("Complaint") (ECF No. 38) brings claims for breach of contract and breach of fiduciary duty (Count I), initiation of wrongful foreclosure (Count II), conversion and unjust enrichment (Count III), and intentional or negligent infliction of emotional distress (Count IV). For the reasons set forth below, the Court GRANTS in part and DENIES in part Defendants' Motion.

I. Background[1]

On November 18, 2005, Plaintiff purchased a house located at 63 Nellie Street, Providence, Rhode Island, which he financed by taking out mortgage loans for $268,000 and $67,000 from Wells Fargo. (Compl. 11.) In 2008, Plaintiff sought to modify his loan with Wells Fargo, but was unsuccessful. (Id. at 11-12.) While Plaintiff pursued this loan modification, an arrearage accumulated on his mortgages, which resulted in Wells Fargo sending a letter to Plaintiff stating that his home would be sold in foreclosure in April 2009. (Id. at 12.) Subsequently, on April 9, 2009, Plaintiff sought Chapter 13 bankruptcy protection in the United States Bankruptcy Court for the District of Rhode Island. (Id.)

---

[1] The following facts are taken from Plaintiff's complaint and construed in his favor. See García-Catalán v. United States, 734 F.3d 100, 102 (1st Cir. 2013).

2

In January 2010, the bankruptcy court confirmed a Chapter 13 plan that reduced the principal of Plaintiff's first mortgage loan to $145,000 and "stripp[ed] off" the second loan. (Id.) Over the next five years, Plaintiff made his Chapter 13 plan payments, which, in March 2015, culminated in the Chapter 13 trustee issuing a notice of final cure mortgage payment, a notice of plan completion, and a final report and account. (Id.) At some point during the bankruptcy proceedings, Wells Fargo submitted a statement that Plaintiff had paid the arrearage in full and was current on all post-petition payments, fees, expenses, and charges. (Id. at 13.) Plaintiff ultimately obtained a discharge order from the bankruptcy court. (Id.)

While the bankruptcy proceedings were ongoing, Plaintiff alleges that Wells Fargo failed to pay property taxes on his home to the City of Providence. (Id. at 15.) According to Plaintiff, the agreements between him and Wells Fargo gave him the right to rely – and he alleges he did rely – on Wells Fargo to use the money he provided in escrow to pay the property taxes. (Id.) Plaintiff further alleges that all of the mortgage payments he made included an escrow amount to pay the property taxes. (Id.) Although it did not use the escrow funds to pay property taxes, Wells Fargo did use them to purchase force-placed property insurance, despite Plaintiff repeatedly sending Wells Fargo evidence that he had obtained his own insurance. (Id. at 17.)

In August of 2011, as a result of Wells Fargo's failure to pay property taxes, the Providence City Tax Collector informed Plaintiff that his home had been sold at a tax sale on June 15, 2011. (Id. at 15-16.) In May 2012, Plaintiff received another notice that his home would be sold for unpaid taxes that were owed as of December 2011. (Id. at 16.) Plaintiff again, in April 2013, received a notice that his home would be sold at a tax sale, despite a mortgage statement issued by Wells Fargo that stated it had paid $5,903.04 to the Providence City Tax Collector and Wells Fargo's representations that it had made regular payments of $1,407.51 to the City throughout 2013. (Id.) These three tax sales forced Plaintiff to "redeem [his home] when it [was] purchased three times." (Id. at 2.)

In addition to failing to pay taxes in accordance with the mortgage agreement, Wells Fargo issued mortgage statements showing inexplicable "late fees, a negative escrow balance and a large amount of mon[ey] held in suspense, not applied to the principal balance or escrow." (Id. at 16-17.) For example, Plaintiff alleges that a statement dated March 16, 2015, showed that Plaintiff was more than $166,000 in arrears on his mortgage payments between June 2009 and March 2015; however, three days after Wells Fargo issued this statement, the company represented to the bankruptcy court that Plaintiff was "current on all post-petition payments." (Id. at 17.)

4

Plaintiff also complains that Wells Fargo issued mortgage statements indicating that he had "not paid his mortgage in years and that his escrow account [was] tens of thousands of dollars short." (Id. at 12.) According to Plaintiff, this was because "all of the payments made to Wells Fargo [were] placed in a suspense account." (Id.) At various times during the course of these events, Plaintiff alleges that the suspense account contained over $100,000. (Id. at 18.) Plaintiff specifically alleges that the suspense account contained more than "$123,000 at a time close to entry of the Discharge Order in Bankruptcy Court." (Id.) Moreover, Wells Fargo allegedly charged interest on the unpaid balance of the mortgage while it held funds in the suspense account and used the funds in the suspense account to earn and retain money. (Id.)

Plaintiff allegedly suffered "debilitating" health issues brought on by Wells Fargo's conduct. (Id. at 19.) And in January 2016, unsure of how to extricate himself from the situation, and believing his mortgage had been paid in full, Plaintiff stopped making payments, which he felt was "the only way left to get someone at Wells Fargo to address the problems" with the company's handling of his account. (Id. at 2.) Wells Fargo responded by issuing a notice that a foreclosure sale was scheduled for

Plaintiff's home. (Id. at 3.) In an effort to stave off foreclosure, Plaintiff brought the instant suit.[2]

II. Legal Standard

On a motion to dismiss, the Court must decide whether the complaint has made "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That is, the Court must decide whether the claim is "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007)). In conducting this inquiry, the Court "accept[s] the truth of all well-pleaded facts and draws all reasonable inferences therefrom in the pleader's favor." García-Catalán, 734 F.3d at 102 (quoting Grajales v. P.R. Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012)). The complaint need not include "a high degree of factual specificity." Grajales, 682 F.3d at 47. But it "must contain more than a rote recital of the elements of a cause of action." Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 53 (1st Cir. 2013) (citations omitted).

---

[2] In addition to these pleaded facts, the Court considers Plaintiff's mortgage agreement, which Defendants attached to their motion. See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) (finding that, at motion to dismiss stage, courts may consider "documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint").

6

III. Discussion[3]

    A. Breach of Contract and Fiduciary Duty

Plaintiff bases his claims for breach of contract and breach of fiduciary duty on Wells Fargo's negligent servicing practices; misuse of escrow funds and suspense accounts; failure to provide an accurate accounting that explains how Plaintiff's payments were applied; and unnecessary purchase of forced-place insurance. (Compl. 15-17.)

    1. Breach of Contract

"To succeed on a breach of contract claim under Rhode Island law, a plaintiff must prove that (1) an agreement existed between the parties, (2) the defendant breached the agreement, and (3) the breach caused (4) damages to the plaintiff." Barkan v. Dunkin' Donuts, Inc., 627 F.3d 34, 39 (1st Cir. 2010) (first citing Petrarca v. Fid. & Cas. Ins. Co., 884 A.2d 406, 410 (R.I. 2005); and then citing Zuromski v. Lukaszek, 20 A.2d 685, 686 (R.I. 1941)).

Plaintiff claims Wells Fargo misused escrow funds, (Compl. 15-16), in particular, that despite his inclusion of escrow funds to pay for his property taxes in his payments to Wells Fargo, and

---

[3] According to the Paragraph 16 of Plaintiff's mortgage, the mortgage is "governed by federal law and the law of the jurisdiction in which the [p]roperty is located." (Mortgage 10, ECF No. 48-2.) Since the property is located in Rhode Island, Rhode Island law and federal law governs the instant motion. (See id. at 3, 10.)

7

mortgage statements from Wells Fargo that showed Wells Fargo paying the property taxes to the City of Providence, the City failed to receive the funds, which resulted in Plaintiff's home thrice being sold at a tax sale. (See id.) Defendants argue, however, that Plaintiff's claim fails because Plaintiff does not identify the specific mortgage provision that required Wells Fargo to pay the property taxes and that Plaintiff has not adequately pleaded damages. (Defs.' Mem. of Law in Supp. of their Mot. to Dismiss Pl.'s First Am. Compl. For Damages ("Defs.' Memo") 10, ECF No. 48-1.)[4]

It is true that Plaintiff does not cite to a specific provision of the mortgage agreement, but a glance at that document shows that Plaintiff was obligated to pay Wells Fargo "amounts due for . . . taxes,"[5] among other things, and that Wells Fargo was

---

[4] Plaintiff did not file an opposition to the Motion, but that does not change the Court's analysis. See Vega-Encarnación v. Babilonia, 344 F.3d 37, 41 (1st Cir. 2003) ("The problem is that when deciding a motion to dismiss on the merits, a district court is obliged to accept the factual allegations contained in the complaint as true. If the merits are at issue, the mere fact that a motion to dismiss is unopposed does not relieve the district court of the obligation to examine the complaint itself to see whether it is formally sufficient to state a claim.") (citations omitted)).

[5] To be precise, Plaintiff was obligated to pay "taxes . . . which can attain priority over [the Mortgage] as a lien . . . on the Property." (Mortgage 4.) Under Rhode Island law, city taxes like those assessed against Plaintiff have priority over mortgages. See R.I. Gen. Laws § 44-9-1 ("The [tax] lien shall be superior to any other lien, encumbrance, or interest in the real estate whether by way of mortgage . . . ."); First Bank & Tr. Co.

8

obligated to pay the taxes "no later than the time specified under [the Real Estate Settlement Procedures Act (RESPA)]." (Mortgage 4-5.) RESPA specifies that such payments must be made "in a timely manner as such payments become due." 12 U.S.C. § 2605(g). It is plain, therefore, that Wells Fargo had an obligation to pay Plaintiff's property taxes out of the escrow funds that Plaintiff alleged he paid to Wells Fargo, at least sometime before Providence put the property up for sale. Furthermore, contrary to Defendants' argument that Plaintiff failed to plead damages, Plaintiff did allege he had to take steps to "redeem [his home] when it [was] purchased three times," (Compl. 2) – surely not a costless undertaking. See Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 77 (1st Cir. 2014) ("Given the allegations in the complaint, [plaintiff]'s damages are obvious . . . .").

Therefore, accepting all his well-pleaded facts and drawing all inferences in his favor, Plaintiff has sufficiently pleaded a plausible breach of contract claim with respect to Wells Fargo's alleged failure to pay Plaintiff's property taxes from the escrow funds paid by Plaintiff. See García-Catalán, 734 F.3d at 103;

---

v. City of Providence, 827 A.2d 606, 610 (R.I. 2003) ("In general, 'taxes that are assessed against a person's real or personal property are a lien against his [or her] real estate . . .' and, other than an easement or restriction of record 'is superior to any other lien, encumbrance or interest in the property [.]'" (alterations in original) (quoting Picerne v. Sylvestre, 324 A.2d 617, 618 (1974))).

9

Barkan, 627 F.3d at 39; see also Akers v. Beal Bank, 668 F. Supp. 2d 197, 200 (D.D.C. 2009) (denying motion to dismiss in a situation similar to that here, notwithstanding "defects in the plaintiff's complaint").

Plaintiff further claims that Wells Fargo breached the contract by misusing "suspense accounts in violation of the provisions of the contract[]" and by failing "to provide an accurate accounting that explains how Plaintiff's payments were applied." (Compl. 16.) Defendants make no argument as to the latter, but to the former, say that the mortgage authorized them to hold funds in a suspense account if payments were insufficient to bring the loan current. (Defs.' Memo 11–12.)

Despite Defendants' non-response, Plaintiff fails to state a breach of contract claim based on Wells Fargo's failure to provide an accurate accounting of how his payments were applied because there is no provision of the mortgage that requires Wells Fargo to provide him an accurate accounting. (See Mortgage.) However, Plaintiff does state a claim with regards to Wells Fargo's application of the funds it held in suspense. Defendants are correct that the mortgage authorized them to hold payments that are insufficient to bring the loan current. (Id. at 4.) But Plaintiff alleges that the loan was current as of March 2015, when as part of Plaintiff's bankruptcy proceeding, Wells Fargo stated that Plaintiff "had paid in full the amount required to cure the

10

default on the creditor's claim and that the debtor was current on all post-petition payments." (Compl. 17.) Indeed, Wells Fargo began applying suspense-account funds to Plaintiff's principal balance, but not until months later, in September 2015 – a plausible breach of Paragraph 1 of the mortgage agreement. (See id. at 2; Mortgage 4.) Additionally, while Plaintiff did not explicitly plead damages in regard to this claim, his damages are, like those stemming from his unpaid taxes, obvious. See Foley, 772 F.3d at 77.

Finally, Plaintiff claims that Wells Fargo breached the terms of the mortgage by purchasing force-placed insurance, even though he repeatedly provided proof to Wells Fargo that he had property insurance. (Compl. 17.) This claim fails because, as Defendants argue, pursuant to Paragraph 5 of the mortgage, Wells Fargo had the right to disapprove of Plaintiff's choice of insurance, so long as Wells Fargo does not exercise this right unreasonably. (Mortgage 6.) And Plaintiff has not alleged that Wells Fargo acted unreasonably in disapproving of Plaintiff's choice of insurance and securing its own coverage.[6] (See Compl. 17.)

---

[6] Plaintiff also claims that Wells Fargo engaged in "negligent servicing practices," violating "RESPA" and the Fair Debt Collection Practices Act. (Compl. 15.) Plaintiff, however, alleges nothing more. (See id.) And without further explanation or any citation to the relevant provisions in the statutes, this claim "is too vague and conclusory" to survive a motion to dismiss. See Galvin v. U.S. Bank, N.A., 852 F.3d 146, 160 (1st Cir. 2017)

11

2. Breach of Fiduciary Duty

Plaintiff claims a breach of fiduciary duty against Wells Fargo premised on the same grounds as his breach of contract claims. (See id. 15-17). "[A] fiduciary relationship arises when one party 'rightfully reposes trust and confidence' in another." T.G. Plastics Trading Co. v. Toray Plastics (Am.), Inc., 958 F. Supp. 2d 315, 327 (D.R.I. 2013) (quoting A. Teixeira & Co., Inc. v. Teixeira, 699 A.2d 1383, 1387 (R.I. 1997)). Defendants are right that Plaintiff has failed to allege facts demonstrating a fiduciary relationship between him and Wells Fargo. See Fleet Nat'l Bank v. Liuzzo, 766 F. Supp 61, 68-69 (D.R.I. 1991). Therefore, Defendants' Motion with respect to Plaintiff's breach of fiduciary duty claim is granted.

B. Initiation of Wrongful Foreclosure

Plaintiff claims that Wells Fargo wrongly initiated foreclosure on the property. (Compl. 16.) This claim fails because the Court finds – and Plaintiff has pointed to – no applicable Rhode Island law countenancing such a claim. Therefore, Defendants' Motion with respect to Plaintiff's initiation of wrongful foreclosure claim is granted.

C. Conversion and Unjust Enrichment

Plaintiff claims conversion and unjust enrichment by Wells

---

(citing Freeman v. Town of Hudson, 714 F.3d 29, 35 (1st Cir. 2013)).

Fargo because Wells Fargo "allowed funds to remain in a suspense account, not applied to the mortgage or to escrow, for years" from which Wells Fargo "used the funds in the suspense account to earn money," retained this earned money, and "charged Plaintiff interest on the entire balance of the mortgage, which continued to increase due to funds in suspense not applied to the loan." (Id. at 18.)

1. Conversion

Under Rhode Island law, "[t]o maintain an action for conversion, [a] plaintiff must establish that [it] was in possession of the personalty, or entitled to possession of the personalty, at the time of conversion." Narragansett Elec. Co. v. Carbone, 898 A.2d 87, 97 (R.I. 2006) (quoting Montecalvo v. Mandarelli, 682 A.2d 918, 928 (R.I. 1996)). "[T]he gravamen of an action for conversion lies in the defendant's taking the plaintiff's personalty without consent and exercising dominion over it inconsistent with the plaintiff's right to possession." Id. (quoting Fuscellaro v. Indus. Nat'l Corp., 368 A.2d 1227, 1230 (R.I. 1977)).

Plaintiff's conversion claims fail because they are an improper repackaging of a breach of contract claim as a tort. See DeChristofaro v. Machala, 685 A.2d 258, 264 (R.I. 1996); see also Clifton v. Nationstar Mortg., LLC, No. 3:12-CV-02074-MBS, 2015 WL 1549108, at *3 (D.S.C. Apr. 6, 2015) (holding plaintiff's assertion

13

that that defendant's misapplication of funds in suspense account in a manner contrary to the settlement agreement is a breach of contract issue, not conversion). Furthermore, Plaintiff can and does argue a breach of contract for what he alleges was Wells Fargo's misuse of funds, but he nowhere alleges that Wells Fargo obtained these funds without his consent. See Wood v. Nationstar Mortg. LLC, No. 6:16-CV-2061-MC, 2017 WL 3484664, at *9 (D. Or. Aug. 14, 2017) (holding a contractual issue and not a conversion claim where the only alleged converted money was late fees charged under the Note).

   2. Unjust Enrichment

A claim for unjust enrichment is an equitable claim, and "it is permissible under Rhode Island law to plead an equitable cause of action in the alternative where an express contract exists." Cappali v. BJ's Wholesale Club, Inc., 904 F. Supp. 2d 184, 197–98 (D.R.I. 2012) (citation omitted). However, "[u]njust enrichment, like other quasi-contractual remedies, is a vehicle for equitable recovery where no rights on an enforceable contract exist." Hasbro, Inc. v. Mikohn Gaming Corp., 491 F. Supp. 2d 256, 264 (D.R.I. 2007) (citing 26 Richard A. Lord, Williston on Contracts § 68:5 (4th ed. 2004)). Here, as Defendants correctly point out, Plaintiff's claim is premised solely on Defendants' handling of Plaintiff's funds held in a suspense account under the terms of the mortgage. (See Defs.' Memo 16; Mortgage 4.) This claim,

therefore, is based on the terms of the contract, not on an allegation that the contract is unenforceable, which is necessary to support a claim based on unjust enrichment. See Hasbro, Inc., 491 F. Supp. 2d at 264. Thus, Plaintiff's claim for unjust enrichment fails and Defendant's Motion To Dismiss with respect to this claim is granted. See Lister v. Bank of Am., N.A., 790 F.3d 20, 23 (1st Cir. 2015).

    D. Intentional or Negligent Infliction of Emotional Distress

Plaintiff's final causes of action are for the intentional and negligent infliction of emotional distress allegedly caused by the initiation of "[t]wo wrongful foreclosure[s] . . . threatening Plaintiff's home" and the sale of Plaintiff's home at a tax sale three times "because of Defendants' actions and failure to act," which have caused Plaintiff to "experience debilitating health issues." (Compl. 19.) Plaintiff alleges that his "debilitating health issues" have a "regular negative impact on his ability to engage in activities he enjoyed in the past and to fully enjoy his artistic, musical, and spiritual life as he did before Defendants caused this harm." (Id.) Moreover, Plaintiff alleges that "[m]ost of his family, friends, and co-workers and persons he supervised on the job have the ads for tax or foreclosure sale that include [his] full name and his address," which "is likely to impact any opportunity for advancement in the near future" because of the "responsibilities of his position and the concerns that are created

15

when someone appears to have an inability to be financially responsible." (Id. at 19-20.)

### 1. Intentional Infliction of Emotional Distress

Rhode Island law has recognized a claim for the intentional infliction of emotional distress for creditor debtor relationships, which has four elements: "(1) the conduct must be intentional or in reckless disregard of the probability of causing emotional distress, (2) the conduct must be extreme and outrageous, (3) there must be a causal connection between the wrongful conduct and the emotional distress, and (4) the emotional distress in question must be severe." Champlin v. Washington Trust Co., 478 A.2d 985, 989 (R.I. 1984). Plaintiff must also show the "existence of resulting physical symptomatology." Clift v. Narragansett Television L.P., 688 A.2d 805, 813 (R.I. 1996) (citing Reilly v. United States, 547 A.2d 894 (R.I. 1988)). "In general a creditor will not be held liable when he has done no more than insist on his legal rights in a permissible way, even though such insistence is likely or even certain to annoy, disturb, or inconvenience the debtor or even cause him to suffer some emotional distress." Champlin, 478 A.2d at 989 (citations omitted).

Plaintiff fails to plead sufficient factual matter to support the elements of an intentional infliction of emotional distress claim. For example, Plaintiff fails to allege that Defendants engaged in conduct that was "intentional" or "in reckless disregard

of the probability of causing emotional distress," id. at 989, instead relying on the conclusory allegation that he was harmed by Defendants' "willful and deliberate actions," (Compl. 19). See Norton v. Hoyt, 278 F. Supp. 2d 214, 221 (D.R.I. 2003).

Plaintiff also fails to plead any physical symptomatology associated with his emotional distress. Again he relies on conclusory allegations, saying that he suffers "debilitating health issues" that have impacted his ability to enjoy the "artistic, musical, and spiritual life" he once had. (Compl. 19.) These conclusory allegations, and Plaintiff's failure to plead specific physical symptoms caused by his alleged emotional distress, are not enough to move forward on his intentional infliction of emotional distress claim. See Lisnoff v. Stein, 925 F. Supp. 2d 233, 241 (D.R.I. 2013).

2. Negligent Infliction of Emotional Distress

Rhode Island recognizes a cause of action for the negligent infliction of emotional distress "in limited circumstances where the plaintiff is either in the zone of physical danger, or is a bystander to a tragic incident involving someone with whom he or she is closely related, and the plaintiff suffers serious emotional harm accompanied by some physical manifestations of his or her distress as a result of the defendant's negligence." Swerdlick v. Koch, 721 A.2d 849, 864 (R.I. 1998) (first citing Marchetti v. Parsons, 638 A.2d 1047, 1052 (R.I. 1994); and then citing D'Ambra

17

v. United States, 338 A.2d 524, 531 (R.I. 1975)).

This claim fails because Plaintiff simply does not allege that he was "in the zone of physical danger" or that he was "a bystander to a tragic incident." See Swerdlick, 721 A.2d at 864; Ward v. Lotuff, No. 09-357-ML, 2009 WL 3615970, at *3 (D.R.I. Nov. 2, 2009). In other words, Plaintiff does not "fall within either of the above-specified classes of persons who can bring claims for negligent-infliction of emotional distress." Jalowy v. Friendly Home, Inc., 818 A.2d 698, 710 (R.I. 2003) (citations omitted).

IV. Conclusion

For the reasons discussed above, Defendants' Motion To Dismiss Plaintiff's First Amended Complaint (ECF No. 48) is DENIED with respect to Plaintiff's Count I breach of contract claim that is based on Defendants' misuse of Plaintiff's escrow funds and failure to pay Plaintiff's property taxes, and on Defendants' misuse of funds held in Plaintiff's suspense account. Defendants' Motion is GRANTED with respect to all remaining bases of Plaintiff's Count I breach of contract claim. Defendants' Motion is also GRANTED with respect to Plaintiff's Count I breach of fiduciary duty, Count II initiation of wrongful foreclosure, Count III conversion and unjust enrichment, and Count IV intentional or negligent infliction of emotional distress claims.

IT IS SO ORDERED.

/s/ W E Smith
William E. Smith
Chief Judge
Date: April 24, 2018